ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

KATHERINE GRIFFIN (CABN 282162)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Katherine.Griffin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KRISTOPHER PURCELL, aka "K-Dawg," <br><br> Defendant. | Case No.: 5:18-CR-506-BLF <br><br> UNITED STATES' PROFFER IN SUPPORT OF THE DETENTION OF KRISTOPHER PURCELL AND OPPOSITION TO PRETRIAL RELEASE <br><br> Date: October 22, 2018 <br> Time: 1:30 p.m. <br> The Hon. Virginia K. DeMarchi |

## I. INTRODUCTION

The United States files this factual proffer in support of the pretrial detention of defendant KRISTOPHER PURCELL as a danger to the community and flight risk. PURCELL is a violent Norteno gang member, and member of the Boronda Boys street gang, who attempted to murder two victims in Salinas, California, on February 12, 2017. Under the law, PURCELL is presumed to be both a flight risk and a danger to the community. *See* 18 U.S.C. § 3142(e)(3)(B). The government requests this Court detain the defendant pending trial in this case, as no condition or combination of conditions will reasonably assure the safety of the community or his subsequent court appearances if he is released.

## II. THE CHARGES

*The Indictment*

On October 11, 2018, a grand jury found probable cause to issue an indictment against PURCELL, charging him with: Attempted Murder in Aid of Racketeering of Victim-1, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count One); Attempted Murder in Aid of Racketeering of Victim-2, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count Two); Assault with a Dangerous Weapon in Aid of Racketeering of Victim-1, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count Three); Assault with a Dangerous Weapon in Aid of Racketeering of Victim-2, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Count Four); and Use/Possession of a Firearm in Furtherance of or During and in Relation to Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Five).

The indictment alleges that PURCELL committed attempted murder in aid of racketeering (and other related offenses) for the purpose of maintaining and increasing his position within the Nuestra Familia prison gang's Monterey County Regiment, a racketeering enterprise consisting of Norteno street gang members and others, including members of the Boronda Boys street gang. Among other activities, the indictment alleges that these Norteno street gang members are expected to "hunt" – i.e. seek out and beat, stab, or shoot – their rival gang members, which include Sureno street gang members. This violence is committed to seek influence and respect, as well as to dissuade cooperation with law enforcement.

Following the filing of this indictment, PURCELL was arrested and subsequently arraigned on October 15, 2018. At that time, the government moved for detention on both grounds – risk of non-appearance and danger to the community – pursuant to the presumption in this case. A detention hearing was set before this Court, to be held on October 22, 2018 at 1:30PM.

*The Underlying Event*

The event underlying each of the above-described charges is a shooting committed by PURCELL and other Norteno street gang members in Salinas, California.

On February 12, 2017, at approximately 12:21AM, law enforcement officers with the Salinas Police Department (SPD) were dispatched to a residence on Orchard Avenue, due to reports of gunshot victims. Upon arrival at the scene, officers encountered a vehicle collision, wherein a white Lexus SUV

2

was pinned between a white Jeep Grand Cherokee and a van parked on the side of the street. The white Lexus was determined to have been stolen weeks earlier. Officers also located two victims nearby. Both victims had been shot and were transported to the hospital. Victim-1 (V-1) suffered multiple bullet wounds, including a bullet strike to the left torso and a bullet wound in his neck, where the bullet was still lodged. V-1 also sustained a graze to his right ear, where the bullet had nearly missed his head. Victim-2 (V-2) also suffered multiple bullet wounds, including a bullet wound to the center of his upper back. Both V-1 and V-2 survived these injuries.

Earlier, on the evening of February 11, 2017, PURCELL and other Norteno street gang members were driving around Salinas in the stolen white Lexus SUV, "hunting" – or, looking for rival Sureno gang members to kill. PURCELL and his fellow gang members located V-1 and V-2, who were driving in a white Jeep Grand Cherokee in the area of Towt Street in Salinas. PURCELL and his co-conspirators followed the victims to the victims' residence on Orchard Avenue. When the victims pulled into their driveway, the Lexus stopped in the street, directly in front of the driveway. At this point, at least three people, including PURCELL, exited the Lexus and began shooting at the victims on their driveway. In order to stop the shooting, one of the victims got back into the Jeep parked in the driveway. The victim then pulled the Jeep out of the driveway and collided with the Lexus, pinning it between the Jeep and a van already parked on the side of the street. All the while, PURCELL and the others continued to shoot at the victims. At this point, there were four shooters, including PURCELL. However, after the collision occurred, PURCELL and the other subjects ran from the area, fleeing on foot. The stolen white Lexus remained at the scene. This event was also captured on video surveillance.

### III. THE STATUTORY PRESUMPTION

The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *See* 18

3

UNITED STATES' PROFFER
IN SUPPORT OF DETENTION

U.S.C. § 3142(f). But a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *See Motamedi*, 767 F.2d at 1406.

However, in cases involving violations of 18 U.S.C. § 924(c), the Act establishes a rebuttable presumption that a defendant is both a flight risk and a danger to the community. *See* 18 U.S.C. § 3142(e)(3)(B). That presumption exists if there is probable cause to believe that the defendant committed the violation. *See* 18 U.S.C. § 3142(e). A grand jury indictment is sufficient to establish probable cause for these purposes. *See United States v. Ward*, 63 F.Supp. 2d 1203, 1209 (C.D.Cal. 1999). Once the presumption is triggered, the defendant has the burden of providing or proffering evidence to rebut the presumption.

As detailed above, the defendant was indicted by a grand jury, which found probable cause to believe that he violated 18 U.S.C. § 924(c), as alleged in Count Five. Thus, the presumption is triggered and the defendant should be presumed to be both a risk of flight and a danger to the community. This, of course, is subject to rebuttal. However, the defendant has not yet provided facts rebutting the legal presumption that he is a danger and flight risk, and a review of the statutory factors demonstrates that he cannot do so.

## IV. <u>SECTION 3142 FACTORS</u>

If a defendant proffers sufficient evidence to rebut the presumption, the Ninth Circuit has identified several relevant statutory factors for determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407.

It is also noteworthy that Congress intended that the statutory presumptions would have a practical effect. *See United States v. Jessup*, 757 F.2d 378, 382 (1st Cir. 1985). That is, the presumption does not disappear when a defendant meets his or her burden of producing rebuttal evidence. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). The presumption remains as evidentiary findings militating against release, to be weighed along

4

UNITED STATES' PROFFER
IN SUPPORT OF DETENTION

with other evidence relevant to the factors listed in Section 3142(g). *Id*.

In the unlikely event that the defendant is able to rebut the statutory presumption against him, the government proffers the following facts as related to the factors to be considered by the Court under section 3142(g).

*Charged Offense; Danger*

Under section 3142(g)(1), a factor to be considered by the Court is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . ." 18 U.S.C. § 3142(g)(1). Plus, the statute requires consideration of "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Thus, two of the four factors under subsection (g) to be considered by the Court weigh heavily in favor of PURCELL's detention.

This case involves both a crime of violence and the use of firearms in the commission of this crime of violence. As provided above, the defendant and his fellow gang members planned, followed, confronted, and repeatedly and continuously shot at two victims in front of the victims' residence, in an attempt to kill these victims. Four shooters were involved in this attempted murder, each using a firearm at close range, including PURCELL. PURCELL tried to kill these victims to gain status and respect as a Norteno gang member.

The crimes charged in this case are extremely serious and undoubtedly heinous. PURCELL and his fellow shooters/gang members shot the victims repeatedly, hitting them in vulnerable areas, such as their back and neck. Fortunately, the victims did not die. Yet, PURCELL clearly intended to murder these victims, and his conduct should be evaluated in this light, despite the victims having survived this brutal attack. The nature and seriousness of this offense provide ample grounds to conclude PURCELL poses an extreme danger to the community.

Furthermore, the triggering of the presumption in this case confirms its statutory significance as a crime committed by individuals more likely to pose a serious danger to the community.

*Weight of the Evidence*

Section 3142(g)(2) provides for the consideration of the weight of the evidence against the

5

defendant. *See* 18 U.S.C. § 3142(g)(2). The government proffers that it has a strong case against this defendant for the crimes charged, including video surveillance, ballistic evidence, other physical evidence, and testimony of law enforcement, cooperating persons, and other witnesses.

*History and Characteristics*

Under section 3142(g)(3), another factor to be considered by the Court is "the history and characteristics of the person." 18 U.S.C. § 3142(g)(3). This includes "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). This also includes "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B). Some of these factors are discussed below. The remaining factors will be argued at the scheduled hearing, if necessary.

**Character and past conduct**. The defendant's past conduct is not only a reflection on his character, but is also a reliable predictor of the defendant's future conduct. The defendant is a violent Norteno gang member, and a dangerous member of society. He will continue to be if released.

As provided above, the defendant lacks respect for the law and for human life. In addition to the attempted murder for which the defendant is charged, the defendant is also a suspect in a homicide that occurred approximately 24 hours prior, at a community center in Salinas. During this killing, the victim was executed – having been shot squarely in the forehead. Video surveillance shows a white Lexus SUV (later determined to be the same stolen white Lexus SUV described above) traveling to the scene of this homicide, only minutes prior to the murder. PURCELL is recognized in this video by law enforcement to be the front seat passenger in this white Lexus SUV as it travelled towards the scene of the homicide. Ballistic evidence shows that the two firearms used during the commission of this homicide were also used during the attempted murder on Orchard Avenue.

Additionally, PURCELL is a drug dealer. PURCELL was a frequent figure in Salinas's Chinatown area, which is a location known for the distribution and use of illegal narcotics. Those who use narcotics

6

gather in this area, residing in tents on the street. Those who sell narcotics walk around the area providing drugs to these users. PURCELL is one such distributor, having been known to sell heroin, methamphetamine, and cocaine in Chinatown. In fact, on May 18, 2017, SPD executed a search warrant on PURCELL's vehicle. On this date, PURCELL and a juvenile were found sleeping in PURCELL's vehicle, which was parked in Chinatown. Inside the vehicle, officers found four baggies of heroin (with an approximate gross weight of 8.1 grams), a baggie of cocaine (with an approximate gross weight of 2.8 grams), a baggie of methamphetamine (with an approximate gross weight of 1.4 grams), and approximately $199.[1] PURCELL was subsequently arrested for possession for sale of heroin and other charges. These charges remain pending in Monterey County.

A recent posting on social media on April 10, 2018, shows PURCELL continues to distribute narcotics, including cocaine.

**Employment, community ties**. The government has no information that PURCELL is employed, outside his work as a drug dealer. PURCELL's ties to the community appear to be criminal in nature – that is, with fellow Norteno gang members and those whom he engages with in the distribution of narcotics.

**Criminal history and supervision**. PURCELL does not appear to have any adult criminal convictions. However, as provided herein, PURCELL was arrested on May 18, 2017 for possessing narcotics for sale. While this charge remained pending, on May 29, 2018, PURCELL was arrested in connection with an assault – specifically, PURCELL had videotaped two individuals beating up a juvenile sex trafficking victim. The sex trafficker was a fellow member of the Boronda Boys street gang. The video was posted on PURCELL's Instagram account. PURCELL also videotaped a second assault of this victim, which was again posted on his Instagram account. This conduct occurred while he was on pretrial release for the aforementioned narcotics sales charge.

IV. <u>PRETRIAL'S RECOMMENDATION</u>

The government has learned that U.S. Pretrial Services (PTS) is recommending PURCELL's

---

[1] Law enforcement information indicates that an individual sleeping in this area, especially with drugs and cash, is likely to be robbed unless they carry certain status within a Norteno street gang and/or clout in Chinatown.

7

UNITED STATES' PROFFER
IN SUPPORT OF DETENTION

release pending trial in this case. Though the final PTS report has not yet been available for the government's review, the government makes the following points in anticipation of what it expects will appear in this report. Furthermore, the government also alerts the Court as to the critical factors that were not considered by PTS in making this release recommendation.

*The Recommendation is Incomplete*

According to the Guidelines on Judicial Policy, PTS explicitly declines to consider certain factors under 18 U.S.C. § 3142 in making its recommendation – namely, PTS will not consider the statutory presumption or the weight of the evidence in any given case. Thus, in making a recommendation in this case, PTS has not considered the fact that this is a presumption case, where flight and dangerousness are presumed by law. Similarly, PTS has not weighed the facts and evidence in this case. Thus, PTS's recommendation to release PURCELL is incomplete.

*Sureties*

The government anticipates that PURCELL's parents will volunteer to act as sureties in this case. The government would oppose such a situation. PURCELL's parents have been on notice that their son was involved in criminal activity since the execution of a search warrant at their house in May of 2017. Since this time, PURCELL has continued to engage in criminal activity. PURCELL has done so while living under their roof, as well as while transient and/or living in Chinatown. PURCELL's parents cannot prevent PURCELL from posing an extreme danger to the community.

This point is illustrated by the circumstances surrounding PURCELL's arrest. On October 12, 2018, PURCELL was arrested by law enforcement with SPD pursuant to an active arrest warrant for the instant charges. As PURCELL was approached by law enforcement, he dropped his cell phone behind one of the seats in his car. Law enforcement recovered the cell phone. Following this recovery, PURCELL and PURCELL's mother were present. PURELL told his mother that the cell phone belonged to her. PURCELL's mother then falsely claimed ownership of the cell phone.

*Tattoo Removal*

PURCELL has been known by law enforcement to have at least three gang-related tattoos, including a teardrop on his face (under one of his eyes), a Budweiser "B" on his forearm, and a "400"

UNITED STATES' PROFFER
IN SUPPORT OF DETENTION

underneath the "B" on his forearm. The "B" and "400" represent membership in the Boronda Boys street gang, and its association with the 400 Block of Hyland Drive, a street in the Boronda Manor area of Salinas, which is an area claimed by members of the Boronda Boys. Information collected during this investigation has revealed that PURCELL got the "B" tattoo when he was first "certified" with the Boronda Boys – that is, when he first killed someone or attempted to do so in order to obtain respect or acceptance from the gang. PURCELL got the "400" and teardrop tattoos at the same time, for committing another shooting. These shootings were "verified" by an older Norteno gang member, in order for PURCELL to receive permission to have these gang-related tattoos.

Recently, law enforcement has seen a trend in gang members removing tattoos in order to avoid law enforcement detection and scrutiny. Also recently, this investigation has showed that PURCELL had his teardrop tattoo removed. The government anticipates that PURCELL will use this tattoo removal to represent to the Court that he is no longer an active gang member and, thus, poses no risk of danger to the community. This is disingenuous, as PURCELL continued to commit criminal activity around the time that he was removing this tattoo.

*GPS Monitoring*

The government also anticipates that location monitoring may be suggested as a condition of release to assure the safety of the community and the appearance of the defendant. Yet, this location monitoring cannot prevent future violence or flight. The data provided by an ankle monitor to PTS is not viewed live (or, 24/7) by PTS. PTS may later be alerted to the defendant's removal of the device or to his unauthorized location – but it appears that there is nothing PTS can do to stop the defendant from engaging in any action, only later notify the Court and request an arrest warrant be issued. Thus, location monitoring can only provide after-the-fact information, and cannot prevent violence or adequately secure the safety of the community in this case. *See, e.g.*, 5:18-CR-47-BLF, Doc. 18 at 14-15 (discussing electronic monitoring as insufficient to prevent flight).

III. <u>CONCLUSION</u>

The defendant in this case is facing very serious and extremely violent charges. He is presumed by law to be both a danger to the community and a flight risk. The law provides that the Court cannot

9
UNITED STATES' PROFFER
IN SUPPORT OF DETENTION

order the defendant's release absent a finding that the defendant has provided sufficient facts to rebut the statutory presumption that he is a danger and flight risk. The defendant cannot do so. In addition to this presumption, the above facts further demonstrate the significant risk of danger to the community should PURCELL be released from custody – one that cannot be overcome by setting conditions of pretrial release. Based on the above, and additional proffers by the government at the scheduled hearing in this case, the government respectfully requests that this Court detain the defendant pending trial.

Dated: October 21, 2018    Respectfully submitted,

ALEX G. TSE
United States Attorney


_____/s_____
KATIE GRIFFIN
Assistant United States Attorney

UNITED STATES' PROFFER
IN SUPPORT OF DETENTION